RALPH JACKSON, *et al.*,

      Plaintiffs,

      v.                             Civil Action No. 12-2065 (JEB)

TEAMSTERS LOCAL UNION 922, *et al.*,

      Defendants.

## MEMORANDUM OPINION

Plaintiffs are former employees of Giant Food, LLC, who lost their jobs in June 2012. They have filed suit against Giant as well as the two unions that represented them – Warehouse Employees Union Local 922 and Teamsters Local 730 – alleging that the three entities conspired to misrepresent the reasons for their termination and to induce them to sign disadvantageous severance agreements. All three Defendants now separately seek to dismiss Plaintiffs' Amended Complaint. They argue that Plaintiffs' causes of action are either preempted by federal labor law, waived by their severance agreements, or lacking in sufficient factual development. While several claims are indeed preempted, the Court finds that the severance agreements must be considered unenforceable at this stage of the proceedings and that Plaintiffs have provided enough facts to otherwise survive a motion to dismiss. The Court will therefore grant in part and deny in part Giant's Motion and deny the Unions'.

## I.      Background

On June 30, 2012, Giant laid off 19 of its employees. <u>See</u> Am. Compl., ¶ 35. Among them were Plaintiffs, men and women who worked as senior staff at the company's Jessup warehouse. <u>See</u> <u>id.</u>, ¶¶ 2-10, 14-15. On these points, all the parties are in agreement. The rest of

the facts in this case, however, are hotly disputed, and at this stage of the proceedings the Court must take Plaintiffs' version of the events as true.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  That is what follows.

Several weeks before the layoffs, Giant and the Unions warned Plaintiffs that work at their warehouse was slowing down and that layoffs were on the horizon.  See Am. Compl., ¶ 27. According to Plaintiffs, the first half of that statement was a lie and Defendants knew it.  See id., ¶¶ 30, 35.  Meanwhile, Giant and the Unions were meeting in secret to coordinate the execution of the layoffs.  See id., ¶ 34.  A business agent for Local 730, moreover, met in secret with four male union members who were scheduled for termination and cautioned them not to sign any severance agreements because in fact work at the warehouse had not slowed down and there would eventually be a recall of laid-off employees.  See id., ¶ 37.  Local 730 conveyed no such message to the female union members scheduled for termination.  See id., ¶ 39.

When Giant fired Plaintiffs, it presented them with a severance agreement that it had previously negotiated with the Unions.  See id., ¶ 36.  Giant and the Unions assured Plaintiffs that Giant would not recall any laid-off employees, whether or not they signed the agreement. See id.  In reality, Giant and the Unions all knew that there would be a recall and had already begun recruiting new personnel to replace the fired employees.  See id., ¶¶ 44-48.  Based on Defendants' representations to the contrary, however, Plaintiffs signed the severance agreements. See id., ¶ 45.

Sure enough, work at the warehouse never slowed down and in fact picked up after Plaintiffs were fired.  See id., ¶¶ 48-52.  Giant thus issued a recall for its laid-off workers – including the four male Local 730 members who had been warned not to sign the severance agreements – but refused to extend that invitation to Plaintiffs, although Plaintiffs deny that their

severance agreements waived their recall rights.  See id., ¶¶ 40, 43.  Plaintiffs filed grievances

with their Unions and were met with silence.  See id., ¶¶ 57-59.  They also filed a complaint with

the National Labor Relations Board, which investigated and ultimately dismissed their case as

meritless.  See id., ¶¶ 60-62.

Plaintiffs subsequently filed this Amended Complaint, alleging that the Unions had

breached their duties of fair representation to them, see id., ¶¶ 63-102, 128-153, and that Giant

had both breached its collective-bargaining agreement and also committed several state-law torts

– namely, misrepresentation, fraud, constructive fraud, detrimental reliance, and retaliation.  See

id., ¶¶ 176-238.  Giant and Local 922 have each filed separate Motions to Dismiss.  See ECF

Nos. 40, 42.  Local 730 has filed a Motion to Dismiss or, in the Alternative, for Summary

Judgment.  See ECF No. 41.

## II.     Legal Standard

As mentioned a moment ago, Giant and Local 922 have moved to dismiss Plaintiffs'

Complaint, while Local 730 has moved to dismiss or, in the alternative, for summary judgment.

In response to Local 730's Motion, Plaintiffs claim that summary judgment would be premature

at this point in the proceedings without further discovery.

Technically, Federal Rule of Civil Procedure 56(d) requires Plaintiffs to submit an

"affidavit or declaration" to support this position.  See Cannon v. District of Columbia, 717 F.3d

200, 208 (D.C. Cir. 2013).  Plaintiffs have not done so, although their Opposition does refer to

Rule 56(d) and also makes clear their need for additional discovery.  See Opp. to Local 730 at

17-18, 22.  At the same time, Local 730's Reply never objects to Plaintiffs' failure to comply

with Rule 56(d), nor does the Union's own chief Motion include a statement of undisputed

material facts, as required by Local Civil Rule 7(h)(1).  Neither party, then, is in a position to

insist on flawless adherence to the rules of procedure. Given that Plaintiffs make multiple

allegations regarding secret meetings and back-room dealing, moreover, this is clearly a situation

where further discovery would be appropriate. Under the "generous approach" used to decide a

Rule 56(d) motion for additional discovery, the Court concludes that summary judgment would

be premature at this juncture and will analyze all Defendants' pleadings under the motion-to-

dismiss standard. Convertino v. DOJ, 684 F.3d 93, 102 (D.C. Cir. 2012); see also id. at 99

("Consistent with the salutary purposes underlying Rule [56(d)], district courts should construe

motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter.")

(quoting Resolution Trust Corp. v. N. Bridge Assocs., 22 F.3d 1198, 1203 (1st Cir.1994))

(internal quotation marks omitted).

      Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a

complaint fails "to state a claim upon which relief can be granted." In evaluating Defendants'

Motions to Dismiss, the Court must "treat the [C]omplaint's factual allegations as true . . . and

must grant Plaintiffs 'the benefit of all inferences that can be derived from the facts alleged.'"

Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v.

United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citation omitted); see also Jerome

Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The notice-pleading rules

are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S.

336, 347 (2005), and Plaintiffs must thus be given every favorable inference that may be drawn

from their allegations of fact. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 584 (2007).

      Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

motion, id. at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Twombly, 550 U.S. at 570).  Plaintiffs must put forth "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Id.  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)).  Though a plaintiff may survive a 12(b)(6) motion even if "recovery is very remote and unlikely," Twombly, 550 U.S. at 555 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)), the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Id. at 556.

## III.    Analysis

Because different issues are presented in Giant's and the Unions' Motions to Dismiss, the Court will separately address each.

### A. Giant's Motion to Dismiss

As a threshold matter, Giant argues that Plaintiffs' causes of action for misrepresentation, constructive fraud, and detrimental reliance should collapse into their claim for fraud because the first three torts are components or duplicates of the fourth, rather than independent causes of action.  In their Opposition, Plaintiffs do not contest that these are not four separate causes of action, and so the Court will treat the point as conceded.  See Hopkins v. Women's Div., General Bd. Of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003).  Counts IV (misrepresentation), VI (constructive fraud), and VII (detrimental reliance) will thus be dismissed.

What remains against Giant, then, are claims for fraud, retaliation, and breach of the collective-bargaining agreement.  The Court will address the first two together and then move to the third.

*1.  Fraud and Retaliation Claims*

Giant argues that Plaintiffs' fraud and retaliation claims are preempted by federal labor law.  The federal law in question is the National Labor Relations Act, <u>see</u> 29 U.S.C. §§ 151-169, a "comprehensive amalgam of substantive law and regulatory arrangements . . . set up . . . to govern labor-management relations affecting interstate commerce."  <u>Local 926, Intern. Union of Operating Engineers, AFL-CIO v. Jones</u>, 460 U.S. 669, 675-76 (1983).  Congress has conferred "broad powers . . . upon the National Labor Relations Board to interpret and to enforce" the NLRA.  <u>Vaca v. Sipes</u>, 386 U.S. 171, 178 (1967).  Two sections of the Act are specifically at issue here.  The first, section 7, protects employees' rights "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in the other concerted activities for the purpose of collective bargaining or other mutual aid or protection."  29 U.S.C. § 157.  The second, section 8, forbids employers from engaging in "[u]nfair labor practices" that would interfere with employees' section 7 rights, 29 U.S.C. § 158(a) & (b), including discrimination based on union activity and breach of the duty to bargain in good faith.  <u>See</u> 29 U.S.C. § 158(a)(3) & (5), § 158(b)(2) & (3).

The applicable preemption doctrine for this case comes from the Supreme Court's seminal decision in <u>San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon</u>, 359 U.S. 236 (1959), which held that the NLRA supersedes state law if "it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [s]ection 7 of the National Labor Relations Act, or constitute an unfair labor practice under [s]ection 8."  <u>Garmon</u>, 359 U.S. at 244.  In other words, "[w]hen an activity is arguably subject to [section] 7 or [section] 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board."  <u>Id.</u> at 245; <u>see also</u> <u>Wash. Serv.</u>

Contractors Coalition v. District of Columbia, 54 F.3d 811, 815 (D.C. Cir. 1995). Because

activity need only be "arguably" regulated by the NLRA in order to defy state regulation, the

reach of Garmon preemption is quite broad. See Amalgamated Ass'n St., Elec. Ry. And Motor

Coach Employees of America v. Lockridge, 403 U.S. 274, 284 (1971). A plaintiff, moreover,

cannot wiggle out from under the shadow of the NLRA through clever pleading – for example,

by framing a claim as a breach of contract rather than an unfair labor practice. See id. at 292.

"Pre-emption . . . is designed to shield the system from conflicting regulation of conduct. It is

the conduct being regulated, not the formal description of governing legal standards, that is the

proper focus of concern." Id. (emphasis added).

Turning to the instant case, Plaintiffs' fraud claim against Giant alleges that the company

"asserted several false representations of material facts to Plaintiffs['] unions," including "that

Giant had no more work and/or [that] there was a permanent slack of work at its . . .

warehouses," and that "Plaintiffs reasonably relied on these misrepresentation[s] in deciding to

sign Giant's 2012 Separation and Release Agreement." Am. Compl., ¶¶ 207, 210. This charge,

as Giant argues in its Motion, amounts to an allegation that the company did not bargain in good

faith with the Unions in regard to the layoffs and the severance agreements. It thus falls under

section 8 of the NLRA, which requires employers to engage in good-faith bargaining with their

employees' unions. See 29 U.S.C. § 158(a)(5) & (d). Indeed, the employer's duty to bargain in

good faith "strikes at the heart of one of the [NLRA's] basic concerns." Serrano v. Jones &

Laughlin Steel Co., 790 F.2d 1279, 1287 (6th Cir. 1986). Plaintiffs themselves "implicitly

recognized" that this matter fell within the NLRB's jurisdiction when they initially sought relief

before that body, claiming that Giant had engaged in unfair labor practices under the NLRA by

lying to them about the layoffs. See Giant MTD, Exh. B (NLRB Charge Filed Against Giant).

Only after losing there did Plaintiffs come to this Court waving the banner of state tort law. See Parker v. Connors Steel Co., 855 F.2d 1510, 1517 (11th Cir. 1988). Plaintiffs' fraud claim is therefore preempted by the NLRA. See Serrano, 790 F.2d at 1286-88; Kolentus v. Avco Corp., 798 F.2d 949, 960 (7th Cir. 1986).

Plaintiffs' retaliation cause of action meets a similar end. This claim alleges that "Plaintiffs filed a grievance on August 15, 2012, in which they grieved their right to be [r]ecalled and rehired," and that "because Plaintiffs had filed their grievances and engaged in protected activity, Giant refused and failed to engage and go through the union grievance process and to recall and/or rehire [them]." Am. Compl., ¶¶ 230, 233. Once again, however, because "[i]t is established that [s]ection 7 [of the NLRA] protects an employee's participation in grievance . . . proceedings," Cook Paint and Varnish Co. v. NLRB, 648 F.2d 712, 727 (D.C. Cir. 1981) (Wright, J., dissenting), and because section 8 of the Act forbids employers from retaliating against employees who exercise that right, see Kilgroe v. Pac. Mar. Ass'n, 208 F.3d 221, at *2 (9th Cir. 2000), Plaintiffs' retaliation claim is preempted by the NLRA.

Plaintiffs muster no defense of the viability of their retaliation claim, but they do contest the preemption of their fraud cause of action. In support, they invoke the Supreme Court's admonition against "inflexible application of [Garmon preemption] . . . especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25, 430 U.S. 290, 302 (1977). They note that Garmon preemption does not apply where "the conduct at issue is only a peripheral concern of the [NLRA] or touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress

intended to deprive the state of the power to act." Id. Plaintiffs contend that theirs is such a case.

They first focus on whether Giant's misrepresentations are covered by the NLRA, observing that, "[w]hile Giant does not make this argument, Local Union 730 has asserted . . . that the [collective-bargaining agreement] does not provide for either severance or recall benefits." Opp. to Giant at 11. As a result, they claim, "[i]f severance and recall are not part of the [agreement] – and Plaintiff[s] do not concede this argument – then the failure to bargain in good faith on those claims can hardly be an unfair labor practice in violation of the NLRA." Id. Not only does this argument respond to a point Giant never raised, but it also lacks citation to any authority for the principle that employer misrepresentations related to severance and recall rights somehow fall outside the reach of the NLRA when such issues are not covered by the collective-bargaining agreement.

Plaintiffs next argue the other side of the coin: "If severance and recall rights are covered by the [collective-bargaining agreement], Giant's misrepresentations were not made in connection with the collective bargaining process and, thus, local concerns over vindicating fraud should prevail over national labor interests." Id. (emphasis added). Plaintiffs, once again, offer no support for the idea that the collective-bargaining process terminates with the union contract itself, rather than reflecting an ongoing responsibility. The one case they cite, Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401 (9th Cir. 1991), offers no aid. Milne held that state-law claims against an employer were not preempted by the NLRA where the employer had made misrepresentations to its employees regarding continued plant operation and job security. Id. at 1413-17. It differs from this case, however, in at least two important respects.

First, its outcome turned on the fact that the employer's misrepresentations involved matters "not subject to mandatory bargaining," such as the company's sales programs and debt payments, and that "[a]n employer's failure or refusal to bargain over a non-mandatory subject does not violate section 8(a)(5) [of the NLRA]." Id. at 1415 (quoting Wells v. General Motors Corp., 881 F.2d 166, 170 (5th Cir. 1989) (internal quotation marks omitted)). Here, by contrast, Giant's alleged misrepresentations regarded severance pay and recall rights, both of which are subject to mandatory bargaining. See Honeywell Int'l, Inc. v. NLRB, 253 F.3d 125, 131-32 (D.C. Cir. 2001) (severance pay subject to mandatory bargaining); Arrow Automotive Indus., Inc. v. NLRB, 853 F.2d 223, 226 (4th Cir. 1988) (citing First Nat. Maint. Corp. v. NLRB, 452 U.S. 666, 677 (1981)) (recall decisions subject to mandatory bargaining). Second, the Milne court emphasized that the employer's "assurances of job security did not constitute bad faith or fraudulent bargaining, because the alleged misrepresentations did not arise during collective or informal bargaining." Milne, 960 F.2d at 1415. Here, however, Plaintiffs accuse Giant of making misrepresentations to their Unions during collective bargaining about the upcoming layoffs, severance benefits, and recall rights.

As Plaintiffs' fraud and retaliation claims are preempted by the NLRA, the Court will grant Giant's Motion to Dismiss Counts V (fraud) and VIII (retaliation).

### 2. Contract Claim

Plaintiffs' remaining claim against Giant alleges that the company violated its collective-bargaining agreement both by firing them despite the fact that work at their warehouse had not slowed down and by refusing to recall them after they had been terminated. See Am. Compl., ¶¶ 176-99. Although the Amended Complaint describes this as a – presumably state law – "[b]reach of [c]ontract" claim, id., the reality is a bit more complicated.

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  Although this language refers only to suits between employers and unions, the Supreme Court has read it more expansively, permitting suits "by and against individual employees as well."  Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562 (1976).  "[T]he pre-emptive force" of section 301 is considered "so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization,'" which renders "[a]ny such suit . . . purely a creature of federal law."  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983).  The preemption inquiry is relatively straightforward: "Section 301 completely preempts any action predicated upon state law if that action 'depends upon the meaning of a collective-bargaining agreement.'"  Cephas v. MVM, Inc., 520 F.3d 480, 484 (D.C. Cir. 2008) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 406 (1988)).

While Garmon preemption, at issue in the last section, see Section III.A.1, *supra*, requires dismissal of state-tort-law claims regarding conduct within the exclusive jurisdiction of the NLRB, "[t]he strong policy favoring judicial enforcement of collective-bargaining contracts [is] sufficiently powerful to sustain the jurisdiction of the district courts over enforcement suits even though the conduct involved was . . . within the jurisdiction of the [NLRB]."  Hines, 424 U.S. at 562; see also Cephas, 520 F.3d at 483-84.  "The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by [section] 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under [section] 301."  Smith v. Evening News Ass'n, 371 U.S. 195, 197 (1962).  In other words,

Garmon preemption voids state-law claims, whereas section 301 preemption transmogrifies them into federal-law claims.

Finally, although a suit under section 301 typically requires the employee to exhaust the grievance and arbitration procedures specified in his collective-bargaining agreement, a plaintiff can bypass that requirement if the union representing him in the grievance/arbitration procedure breached its duty of fair representation. This creates "'a hybrid [section] 301/fair representation claim' consist[ing] of 'two [intertwined] causes of action,' one against the employer for breach of the CBA and the other against the union.'" Cephas, 520 F.3d at 485 (quoting DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65 & n.14 (1983)).

Here, there is no denying that Plaintiffs' breach-of-contract claim against Giant turns on the meaning of their collective-bargaining agreement. As Plaintiffs allege that Giant violated that agreement by firing and then later failing to recall them, see Am. Compl., ¶¶ 190-98, the success of their argument will, obviously, depend upon the agreement's terms. As a result, Plaintiffs' contract claim is completely preempted by the NLRA and arises under section 301 of that statute, not state contract law. See Cephas, 520 F.3d at 483-84.

Although the Amended Complaint is unclear on this point, it appears that Plaintiffs intended to avoid the grievance/arbitration requirement for their section 301 claim by bringing a hybrid section-301/fair-representation suit against both Giant and their Unions. The Amended Complaint describes the difficulties that Plaintiffs had in getting their Unions to respond to their grievances, see Am. Compl., ¶¶ 58-59, and it also includes claims against both Local 922 and Local 730 for breach of the duty of fair representation. See id., ¶¶ 90-127, 128-53. Plaintiffs do not object to Giant's characterization of their suit as a "[h]ybrid [d]uty of [f]air [r]epresentation / [b]reach of [c]ontract [c]laim," Giant MTD at 11, and in fact use that same terminology to

describe the claim in their Opposition.  See Opp. to Giant at 13.  The Court will therefore treat

Plaintiffs' breach-of-contract claim against Giant as a hybrid section-301/duty-of-fair-

representation claim.

To bring such a hybrid claim, a plaintiff must show that "(1) the union breached its [duty

of fair representation] and (2) the employer breached the CBA."  Cephas, 520 F.3d at 485.  Proof

that the union breached its duty is an "indispensable predicate" for a hybrid action.  United

Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 62 (1981).  Giant contends that Plaintiffs have

failed to satisfy that predicate, pointing to the arguments in Local 922's and Local 730's own

Motions to Dismiss for why neither Union violated its duty of fair representation.  The Court, as

it will explain later on, does not find those arguments persuasive.  See Section III.B, *infra*.  Just

as the Unions lose on this point, so, too, does Giant.

The company presses on, however, arguing that even if Plaintiffs have stated a viable

hybrid claim, their case should still be dismissed because they waived any such claim against

Giant in the severance agreements they signed when they were laid off.  Those agreements

provided that Plaintiffs would "fully release, waive, and forever discharge [Giant] . . . from any

and all . . . claims . . . whether known or unknown, arising prior to the Effective Date of this

Agreement."  Giant MTD, Exh. A (Severance Agreement), ¶ 3.  The agreements also specified

that their effective date would be seven days after they were signed, or approximately July 8,

2012.  See id., ¶ 12(g); Am. Compl., ¶¶ 44, 123.  According to Giant, then, because the layoffs

and recalls that allegedly breached the collective-bargaining agreement occurred on June 30 and

July 1, Plaintiffs have waived any claim against the company based on those events.

In opposition, Plaintiffs contend that the severance agreements – including the waiver

provisions – are unenforceable because they signed those agreements based on

misrepresentations made by Giant.  To evaluate this argument, the Court turns to the law of

Maryland, which governs the agreements according to their choice-of-law provisions.  <u>See</u>

Severance Agreement, ¶ 14.  In Maryland, a contract is voidable if signed in reliance upon a

misrepresentation of material fact by a counter-party.  <u>See</u> <u>Snyder v. Herbert Greenbaum &</u>

<u>Assoc., Inc.</u>, 380 A.2d 618, 621 (Md. Ct. Spec. App. 1977).  Indeed, a party may rescind a

Maryland contract even if the maker of the misrepresentation did not know of "its actual or

probable falsity" or "act with an intent to deceive."  <u>In re Adoption/Guardianship Nos.</u>

<u>T00130003, T00130004</u>, 805 A.2d 254, 263 (Md. 2002).  Here, Plaintiffs have alleged that they

signed the severance agreements based on Giant's false assurances regarding the lack of

available work and the dim prospects of a recall.  <u>See</u> Am. Compl., ¶¶ 74, 107-09, 164, 166, 168.

Because at this stage of the proceedings, the Court takes the Plaintiffs' version of the events as

true, <u>see</u> <u>Sparrow</u>, 216 F.3d at 1113, it must presently regard the contracts as unenforceable.

     Giant's only response to this charge is to accuse Plaintiffs of reiterating their fraud claim,

which, as explained earlier, is preempted by the NLRA.  <u>See</u> Section III.A.1, *supra*.  According

to Giant, "Plaintiffs cannot avoid <u>Garmon</u> preemption by asserting these same fraud claims in the

context of their claim for breach of contract under [s]ection 301. . . . [N]either of the cases

Plaintiffs cite lends support to their argument that a claim of fraud or misrepresentation is

cognizable in the context of a [s]ection 301 breach of contract claim."  Giant Reply at 10 & n.4.

This argument, however, misunderstands the legal issues at stake.  Plaintiffs have not reframed

their fraud claim as one for breach of contract.  Rather, they have argued that Giant's

misrepresentations – which also happened to form the basis of their fraud claim – rendered the

severance agreements unenforceable and thus vitiated the waiver provisions as potential defenses

against their section 301 claim.  The two issues are analytically distinct.  The fact that the NLRA

preempts Plaintiffs' fraud claim does not mean that Plaintiffs are barred from invoking that alleged fraud in any other aspect of this suit.

In sum, the Court must regard the waiver clauses in the severance agreements as unenforceable at this stage of the proceedings, and it will therefore deny Giant's Motion to dismiss Plaintiffs' hybrid section-301/duty-of-fair-representation claim.

B. The Unions' Motions to Dismiss

Plaintiffs have lodged only one claim against their Unions, Local 922 and Local 730: breach of the duty of fair representation, the other half of the hybrid claim that they brought against Giant. The NLRA, which authorizes unions to engage in collective bargaining on behalf of their members, imposes a corresponding duty of fair representation upon them. See Vaca v. Sipes, 386 U.S. 171, 177 (1967); Ford Motor Co. v. Huffman, 345 U.S. 330, 338 (1953). That duty requires each union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca, 386 U.S. at 177. A union breaches its duty of fair representation "when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Id. at 190; see also Davenport v. Int'l Bhd. of Teamsters, AFL-CIO, 166 F.3d 356, 361 (D.C. Cir. 1999).

The Supreme Court has cautioned, however, that "Congress did not intend judicial review of a union's performance to permit the court to substitute its own view of the proper bargain for that reached by the union." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 78 (1991). For that reason, "[a]ny substantive examination of a union's performance . . . must be highly deferential." Id. A union's actions are considered arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide

range of reasonableness' as to be irrational." Id. at 67 (quoting Ford Motor Co., 345 U.S. at 338). Discrimination only violates the duty of fair representation if it is "invidious." Id. at 81. Finally, plaintiffs must meet a "demanding standard" to establish that a union acted in bad faith, which "requires a showing of fraud, or deceitful or dishonest action." Int'l Union of Electronic, Elec. Salaried, Mach. and Furniture Workers, AFL-CIO v. NLRB, 41 F.3d 1532, 1538 (D.C. Cir. 1994) (internal quotation marks omitted).

Here, Plaintiffs' duty-of-fair-representation claims against Local 922 and Local 730 spring from their allegations that the Unions negotiated in bad faith severance agreements that were detrimental to them, lied to them about the availability of work and the likelihood of a recall, failed to inform them about the time they had to consider the severance agreements before signing, and failed to engage in the union grievance process. See Am. Compl., ¶¶ 95-100, 133-46, 150-53. Plaintiffs also claim that Local 730 discriminated against two of its female members – Tiffany Cherry and Sharron Foster – by failing to warn them, as it did several of its male members, that they should not sign the severance agreements. See id., ¶ 147.

As an initial defense, both Unions repeat Giant's waiver argument. A hybrid section-301/duty-of-fair-representation claim requires a plaintiff to show that his grievances would have been sustained if his union had done its duty. See Self v. Drivers, Chauffeurs, Warehousemen, & Helpers Local Union No. 61, 620 F.2d 439, 443-44 (4th Cir. 1980); Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1018 (3d Cir. 1977). Local 922 and Local 730 therefore contend that Plaintiffs' case must fail because any grievance against Giant would have fizzled in light of the waiver clauses in the severance agreements. Plaintiffs concede that "absent a breach of contract claim against Giant there is no breach of the duty of fair representation claim against either of the local unions," Opp. to Local 922 at 6, but reassert that the severance agreements are

unenforceable because they were signed in reliance on misrepresentations by Giant. For the reasons outlined previously, <u>see</u> Section III.A.2, *supra*, the Court agrees at this juncture.

Local 730 offers a few ancillary points to this argument that Giant did not raise on its own, but like Giant, the Union has mistaken Plaintiffs' attack on the waiver clause for a separate cause of action. First, Local 730 contends that Plaintiffs have not stated with sufficient particularity the facts surrounding the alleged misrepresentations, as required by Federal Rule of Civil Procedure 9(b): "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." That rule, however, applies only to plaintiffs who are "[p]leading [s]pecial [m]atters," FRCP 9, not, as here, to plaintiffs arguing fraud in an opposition brief. Indeed, the particularity requirement in Rule 9(b) is intended to "discourage the initiation of suits brought solely for their nuisance value" and to "safeguard[] potential defendants from frivolous accusations of moral turpitude," <u>U.S. ex rel. Joseph v. Cannon</u>, 642 F.2d 1373, 1385 (D.C. Cir. 1981), a concern that is not present when a plaintiff brings a separate cause of action and then alleges fraud in order to defeat a defense raised by the defendant. In any event, given the circumstances, the Court finds that Plaintiffs' descriptions of the facts surrounding the alleged misrepresentations, which include the "time, place, and content of the false misrepresentations," <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1278 (D.C. Cir. 1994), satisfy Rule 9(b). <u>See</u> Am. Compl., ¶¶ 74, 107-09, 164, 166, 168.

Second, Local 730 argues that Maryland law requires a plaintiff to prove that the defendant <u>knowingly</u> made a false representation with the <u>intent</u> to defraud the person injured, facts the Union claims are not present here. Once again, however, this argument confuses misrepresentation as a cause of action with misrepresentation as a defense against contract formation. As explained above, Maryland law does <u>not</u> require a plaintiff to show that the maker

of a misrepresentation know of its falsity or intend to defraud in order to disaffirm a contract on that basis. See In re Adoption, 805 A.2d at 263. Neither of these two arguments, then, are enough to save the severance agreements at this stage of the proceedings.

Moving on to the heart of the Unions' Motions, both Local 922 and Local 730 contend that Plaintiffs have failed to meet the pleading standard set out by the Supreme Court in Twombly and Iqbal. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570; see also FRCP 8(a)(2). According to the Unions, the Amended Complaint contains only naked accusations of wrongdoing, devoid of factual content that would show that Plaintiffs are entitled to relief.

A review of the Amended Complaint, however, belies this argument. Plaintiffs' duty-of-fair-representation claims against both Local 922 and Local 730 plainly contain detailed and specific factual allegations, to wit: the Unions met in secret with Giant to plot the layoffs and negotiate the disadvantageous severance agreements, see Am. Compl., ¶¶ 34, 99, 104, the Unions lied to Plaintiffs about the volume of work available and the likelihood of a recall, see id., ¶¶ 65-70, 83, 85, 95-97, 105-08, 133-35, 152-53, the Unions failed to respond to their grievances, see id., ¶¶ 53, 55-59, 87, 98, 125-126, 136, 150, and Local 730 warned only its male members not to sign the severance agreements. See id., ¶¶ 37-40, 120-122, 147-49. This is more than enough "factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

In its Reply, Local 922 cites two cases in which plaintiffs failed to adequately allege a breach of the duty of fair representation, but these cases serve only to underscore the fact that Plaintiffs here have met their burden to plead their case under Rule 8. In Slovinec v. Communications Workers of America, 860 F. Supp. 2d 25 (D.D.C. 2012), the court dismissed a complaint alleging that a union had breached its duty of fair representation by refusing to allow

the plaintiff to attend a meeting involved in one of the steps of the workplace-grievance process. See id. at 29. In rejecting the plaintiff's claim, the court explained that "[a] union does not breach its duty of fair representation simply by failing to give the grievant-member an opportunity to attend and notice of a particular segment of the grievance process," id. at 30 (quoting Higdon v. United Steelworkers of Am., AFL-CIO-CLC, 706 F.2d 1561, 1562 (11th Cir. 1983)) (internal quotation marks omitted), and that, as a result, the complaint lacked "factual allegations to support [the plaintiff's] assertion that [his union's] refusal to allow him to attend the . . . meeting amounts to a viable legal claim." Id. Here, by contrast, neither Union asserts that Plaintiffs' factual allegations, if true, would not amount to a viable claim for breach of the duty of fair representation.

In the second case cited by Local 922, Buckner v. UPS, No. 09-411, 2011 WL 302813 (E.D.N.C. Jan. 27, 2011), the court dismissed a duty-of-fair-representation claim backed primarily by conclusory statements, rather than specific facts. The allegations in that case, however, were obviously paper-thin: the plaintiff alleged that his union "was arbitrary and or [*sic*] grossly deficient in its representation of my grievances or issues involving seniority and pay" and that his union representative "did fail in his duty of fair representation by not protecting and or [*sic*] enforcing my legal rights with regards [*sic*] to the [collective-bargaining agreement] and or [*sic*] State and or [*sic*] Federal Laws [*sic*] regarding seniority and pay issues." Id. at *3. These are the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that the Supreme Court has rebuked, Iqbal, 556 U.S. at 678, and they fall far short of the detailed and substantive factual allegations contained in the Amended Complaint here. The one bit of the complaint in Buckner that did contain "a specific, nonconclusory factual allegation" was belied

by the plaintiff's own evidence and dismissed on that ground, a circumstance not present in this case. <u>Buckner</u>, 2011 WL 302813, at *3.

Finally, both Local 922 and Local 730 emphasize Plaintiffs' previous, unsuccessful attempt to bring their duty-of-fair-representation claims before the NLRB. The Unions note that the NLRB's refusal to issue a complaint is "entitled to great weight." <u>Hanna Mining Co. v. Dist. 2, Marine Engineers Beneficial Ass'n, AFL-CIO</u>, 382 U.S. 181, 192 (1965). Nevertheless, while such a refusal "can be helpful when a court must decide whether a dispute is within the [NLRA]'s scope," it is "not equivalent to a decision by the Board on the merits." <u>Certco, Inc. v. Int'l Bhd. of Teamsters, Local Union No. 695</u>, 722 F.3d 1097, 1100 (7th Cir. 2013) (citing <u>Hanna Mining Co.</u>, 382 U.S. at 192). In other words, the "weight" given to the NLRB's decision bears on the NLRA's preemptive effect, not whether a plaintiff has stated a claim for relief under the Act. Local 922 itself has recognized this fact. <u>See</u> Local 922 MTD at 6 (conceding that NLRB's dismissal of Plaintiffs' claims is "not dispositive of the instant litigation"). With all deference to the NLRB, then, its rejection of Plaintiffs' claim is not enough to tip the balance against them on this point.

In sum, Plaintiffs have stated plausible claims against Local 730 and Local 922 for breach of the duty of fair representation. The Court will therefore deny both Unions' Motions.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order that will grant in part and deny in part Giant's Motion to Dismiss and deny the Unions' Motions to Dismiss. Plaintiffs' claims for fraud, misrepresentation, constructive fraud, detrimental reliance, and retaliation will be dismissed. Giant's and the Unions' Motions to Dismiss Plaintiffs' hybrid §

301/duty-of-fair-representation claim will be denied.  A separate Order consistent with this

Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 12, 2014