**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **RALPH JACKSON**, *et al.*, <br><br>    **Plaintiffs**, <br><br>    v. <br><br>**TEAMSTERS LOCAL UNION 922**, *et al.*, <br><br>    **Defendants.** | Civil Action No. 12-2065 (JEB) |

## MEMORANDUM OPINION

"A deposition is not a take home examination." Greenway v. Int'l Paper Co., 144 F.R.D. 322, 325 (W.D. La. 1992).

Plaintiffs are former employees of Giant Food, LLC, who were terminated from their positions in June 2012. They have filed suit against Giant and the two unions representing them, alleging that these three Defendants conspired to misrepresent the reasons for their firing and to induce them to sign disadvantageous severance agreements. In the course of lengthy and contentious discovery proceedings, a number of depositions were taken. After the conclusion of the depositions, six deponents submitted errata sheets revising significant and material portions of their testimony – in some cases, changing answers from "yes" to "no." Arguing that these alterations constitute an abuse of Federal Rule of Civil Procedure 30(e), Defendants now move to strike the errata sheets. Although our Circuit has not yet had occasion to interpret that rule, the Court believes that both logic and the weight of existing authority favor granting the Motion, albeit with minor exceptions for clerical revisions.

I.     **Background**

As a prior Opinion set forth in detail the factual background of this suit, see Jackson v. Teamsters Local Union 922, 991 F. Supp. 2d 71 (D.D.C. 2014), the Court will now reiterate only those facts relevant to the present Opinion.

Plaintiffs are unionized former employees of Giant Food. In connection with their June 2012 termination, they were allegedly induced by Giant to sign severance agreements – previously negotiated with their unions – based on the false representation that no laid-off employees would be recalled to work. When other workers were in fact recalled, Plaintiffs pursued administrative remedies to no avail and ultimately filed this suit, alleging a number of claims against both Giant and the unions that represented them. In its previous Opinion, this Court dismissed all of the claims except Plaintiffs' hybrid count alleging violations of § 301 of the Labor Management Relations Act and the unions' duty of fair representation. See id. at 86. Discovery then commenced.

This was, unfortunately, no honeymoon period, and the Court was required to intervene on multiple occasions to resolve squabbles great and small. Of particular moment, Defendants deposed or re-opened the depositions of Plaintiffs' damages expert Dr. Jerome Paige, non-party witness Thomas Jones, and the following four Plaintiffs: Linda Mathis, Ralph Jackson, Donchez Coates, and Donna Ward. Their depositions complete, each of these deponents submitted errata sheets containing 2-4 pages of revisions to their testimony. Many consisted of changes to the fundamental meaning of answers or substitutions of substantive responses for what had been cursory answers. See Mot. at 1-2; id., Exhs. 1-5; Reply, Exh. 1 (Errata Sheet of Jerome Paige). The explanations for these changes, enigmatically, were packaged in one-word descriptions, such as "clarification," "correction," or "mistake." Defendants now move to strike the errata sheets,

arguing that Plaintiffs have violated Fed. R. Civ. P. 30(e) by improperly altering their deposition testimony after the fact.

## II.     Legal Standard

In seeking to determine the legal standard here, the central questions are straightforward: Under what circumstances may a deponent use an errata sheet to make material or contradictory changes to her deposition testimony? Assuming limitations exist, may a district court grant a motion to strike such errata sheets, or should it wait until summary judgment, at which time it may consider the original testimony along with the revisions?

The Court starts with the plain language of Rule 30(e), which provides the mechanism by which a deponent may review a deposition transcript and make changes to that testimony:

> (1) *Review; Statement of Changes.* On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> (A) to review the transcript or recording; and
>
> (B) if there are changes <u>in form or substance</u>, to sign a statement listing the changes and the reasons for making them.

(emphasis added). Although the rule appears to clearly state the types of changes permitted in errata sheets – those "in form or substance" – it does not dictate how courts should treat such changes.

While the D.C. Circuit has not yet provided guidance in this area, other circuits have been less reticent. The Court thus conducts a survey of that law before resolving how to proceed here. It first briefly mentions related law in our Circuit, then considers how courts treat material changes in errata sheets at summary judgment, and concludes by examining the propriety of motions to strike such sheets.

A.  D.C. Circuit

Although Rule 30(e) has garnered no attention here, this Circuit, like virtually all of its sisters, does follow the sham-affidavit rule, which bars a deponent from filing a contradictory post-deposition affidavit in an attempt to fabricate a material issue of fact and thus preclude the granting of summary judgment.  See Pyramid Sec. Ltd. v. IB Resolution, Inc., 924 F.2d 1114, 1123 (D.C. Cir. 1991) (recognizing principle that a party "may not create a material issue of fact simply by contradicting its prior sworn testimony"); accord Galvin v. Eli Lilly & Co., 488 F.3d 1026, 1030 (D.C. Cir. 2007).  The Rule 30(e) errata sheet is, unquestionably, a distinct procedural mechanism from the post-deposition affidavit.  A number of circuit courts, as will be discussed *infra*, nonetheless view the two as functionally synonymous, and they extrapolate from the sham-affidavit doctrine a similar prohibition on contradictory Rule 30(e) errata sheets.  While our Circuit has not taken this step, the viability of the sham-affidavit doctrine here is instructive moving forward.

B.  Summary Judgment

Different circuits have taken somewhat varying approaches to the treatment of errata sheets at summary judgment.  Some have instructed district courts to consider both the revisions and the original testimony, while others have been considerably more restrictive in disallowing errata sheets that offer substantive or material alterations.  None, it should be noted, holds that revisions automatically replace erase the original responses from the record.

The Court begins with an influential Second Circuit case.  In Podell v. Citicorp Diners Club, Inc., 112 F.3d 98 (2d Cir. 1997), the plaintiff made an arguably "damaging" admission on a material matter in his deposition, see id. at 103, and attempted to revise his testimony through contradictory errata sheets.  On a motion for summary judgment, the district court considered the totality of the evidence – *i.e.*, both the original and revised testimonies.  Because it found the

4

reasons for the changes "'unconvincing in the extreme,'" id., it concluded that summary judgment was warranted for the opposing party. On appeal, Podell argued that Rule 30(e) "'expressly allows the final changes to a deposition transcript to become the actual record'" and thus the "district court erred by relying on his original answers – as opposed to his amended ones – in granting summary judgment." Id.

The Second Circuit rejected this position in affirming the district court. In doing so, it first offered an expansive view of Rule 30(e): "'The language of the Rule places no limitations on the type of changes that may be made[,] . . . nor does the Rule require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes' – even if those reasons 'are unconvincing.'" Id. (quoting Lugtig v. Thomas, 89 F.R.D. 639, 641 (N.D. Ill. 1981)). It then explained: "At the same time, when a party amends his testimony under Rule 30(e), [t]he original answer to the deposition questions will remain part of the record and can be read at the trial . . . . Nothing in the language of Rule 30(e) requires or implies that the original answers are to be stricken when changes are made." Id. (internal quotations omitted).

The court ultimately concluded that the district court was on "firm ground in holding that Podell was 'not entitled to have his altered answers take the place of the original ones,' and that his 'changed answers bec[a]me [simply a] part of the record generated during discovery.'" Id. In other words, Podell could not prevent the granting of summary judgment merely "by scratching out and recanting his original testimony" via errata sheets, and his doing so "[did] not weigh enough in the balance to create an issue of fact for a jury." Id.

The Third Circuit, similarly, permits a district court to exercise discretion in either allowing or rejecting contradictory changes at summary judgment:

> [W]hen reviewing a motion for summary judgment, a district court
> does not abuse its discretion under Rule 30(e) when it refuses to

>consider proposed substantive changes that materially contradict prior deposition testimony, if the party proffering the changes fails to provide sufficient justification. At the same time, we emphasize that courts may, in their discretion, choose to allow contradictory changes (and implement [certain] remedial measures . . .) as the circumstances may warrant.

EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 268 (3d Cir. 2010).

The Sixth, Seventh, Ninth, and Tenth Circuits, conversely, are more restrictive, following the logic of the sham-affidavit doctrine to narrow the scope of possible changes sought via errata sheets. As mentioned earlier, this doctrine provides that a court should disregard an affidavit that is inconsistent with prior deposition testimony when it "constitutes an attempt to create a sham fact issue" at summary judgment. See Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty., 330 F.3d 1275, 1282 (10th Cir. 2003) (quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)). Following this line of reasoning, these courts have generally excluded the submitted revisions. In these circuits, errata sheets may typically be used for corrective, but not contradictory, changes – unless the contradictory change is a transcription error. See Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 389 (7th Cir. 2000) ("We also believe, by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription . . . .") (internal citations omitted); Hambleton Bros. Lumber Co. v. Balkin Enters., Inc., 397 F.3d 1217, 1225-26 (9th Cir. 2005) (in affirming district court's striking of errata sheets, relying on sham-affidavit doctrine to reject contradictory changes made after summary judgment motion was filed and noting that "[w]e agree with our sister circuits' interpretation of FRCP 30(e) on this point, and hold that Rule 30(e) is to be used for corrective, and not contradictory, changes"); Burns, 330 F.3d at 1282 (rejecting contradictory changes and holding that errata sheets submitted pursuant

6

to Rule 30(e) should be evaluated pursuant to sham-affidavit test); A.C. v. Shelby County Bd. of Educ., 711 F.3d 687, 702-03 (6th Cir. 2013) ("Just as a party who has been examined at length on deposition [cannot] raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, so also we think it clear that a party moving for summary judgment cannot extinguish a genuine issue of material fact simply by filing an errata sheet and affidavit to counteract the effect of previous deposition testimony.") (internal citation and quotation marks omitted; alteration original).

The Eleventh Circuit has also seemingly endorsed this more restrictive approach, albeit without explicitly relying on the sham-affidavit doctrine. In Norelus v. Denny's, Inc., 628 F.3d 1270 (11th Cir. 2010), the court affirmed the district court's imposition of 28 U.S.C. § 1927 sanctions for vexatiously multiplying the proceedings against the deponent's counsel, who had submitted a "novella-length" errata sheet containing contradictory, substantive changes. Id. at 1281. The court, in reaching that outcome, cited the bulk of the previously discussed case law and concluded that the errata sheet was "improper," particularly in light of the huge expense incurred by the parties in taking the eight-day deposition and the issues generated by the very filing of the errata sheet. See id. at 1281-82.

Last, the First Circuit has not explicitly addressed the question, although it did have occasion to discuss Rule 30(e). In Pina v. Children's Place, 740 F.3d 785 (1st Cir. 2014), the deponent made changes beyond clerical revisions through a Rule 30(e) errata sheet. The district court denied opposing counsel's motion to re-open the deposition, and the First Circuit affirmed. The court first noted that "Rule 30(e) does not limit a party to the correction of stenographic errors; it permits changes 'in form or substance.'" Id. at 792. It nonetheless affirmed the district court largely because the changes "were either not substantive or . . . not material." Id. The

decision proves of limited utility inasmuch as it deals with a challenge to the district court's discretionary decision not to re-open the deposition, rather than a head-on challenge to the submission of a contradictory errata sheet.

While these opinions thus employ a spectrum of approaches when considering errata sheets at summary judgment, this Court believes our Circuit would agree with essentially every circuit in holding that material revisions should not be accepted absent convincing explanations. This is particularly so where the D.C. Circuit, like all circuits, has a well-established sham-affidavit doctrine, which offers a close analog to the restrictive approach to errata sheets. It makes little sense to prohibit one but allow the other, as this would provide an effective work-around to the sham-affidavit doctrine.

Although this conclusion informs the Court's handling of the errata sheets, it does not resolve the current case. The question remains as to whether a district court may address contradictory or material changes to deposition testimony at the motion-to-strike stage.

C. Motion to Strike

This is not *terra incognita*. Many other district courts, guided by the above precedent, have confronted the issue. While a few, almost exclusively in the Second Circuit, believe that courts should wait until summary judgment – and then consider the alterations along with the original testimony – the clear majority approves of granting motions to strike contradictory or material errata sheets, unless supported by convincing explanations.

The Court starts with Greenway v. Int'l Paper Co., 144 F.R.D. 322 (W.D. La. 1992), a case often cited in Rule 30(e) discussions. In a pleading akin to a motion to strike, the defendant there "moved to suppress and nullify the attempts by [plaintiff] to alter her deposition testimony." Id. at 323. In granting the motion, the district court explained:

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, *i.e.*, he reported "yes" but I said "no," or a formal error, *i.e.*, he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. <u>A deposition is not a take home examination.</u>

Id. at 325 (emphasis added).

Other courts in recent decisions have agreed that considering the validity of errata sheets at the motion-to-strike stage is appropriate; indeed, they have frequently struck such revisions, often on the ground that the explanation was insufficient. See, e.g., <u>Maronda Homes, Inc. of Florida v. Progressive Exp. Ins. Co.</u>, No. 14-1287, 2015 WL 4167377, at *3 (M.D. Fla. July 9, 2015) (prior to summary judgment, granting motion to strike errata sheet and holding that "absent a good reason, such as a transcription error or sufficient showing of confusion, material and contradictory changes are not permissible in [the Eleventh Circuit]"); <u>Stradtman v. Republic Servs., Inc.</u>, No. 14-1289, 2015 WL 3404139, at *1-3 (E.D. Va. May 26, 2015) (prior to summary judgment, granting in part motion to strike errata sheets); <u>Green v. Wing Enterprises, Inc.</u>, No. 14-01913, 2015 WL 506194, at *2 (D. Md. Feb. 5, 2015) (prior to summary judgment, granting in part motion to strike errata sheet and noting that "[o]ther considerations relevant to determining whether to strike a deponent's proposed changes include the adequacy of the reason[,] . . . . [which] cannot be conclusory"); <u>Azco Biotech Inc. v. Qiagen, N.V.</u>, No. 12-2599, 2015 WL 350567, at *4-5 (S.D. Cal. Jan. 23, 2015) (striking errata sheet for failure to provide reasons); <u>Jones-McNamara v. Holzer Health Sys., Inc.</u>, No. 13-616, 2015 WL 196048, at *2-6 (S.D. Ohio Jan. 14, 2015) (prior to summary judgment, granting in part motion to strike errata sheets and noting that "district courts inside and outside the Sixth Circuit have recognized that

the Sixth Circuit is apparently the one court of appeals that permits a deponent to correct only typographic and transcription errors") (internal citations and quotation marks omitted); Freedman v. Fisher, No. 13-3145, 2014 WL 5461488, at *2 (E.D. Pa. Oct. 28, 2014) (granting motion to strike untimely and inadequately justified errata sheet).

Some courts, conversely, disagree and believe that they are required to wait for summary judgment, although no circuit court has ever so specified.  See Thompson v. Workmen's Circle Multicare Ctr., No. 11-6885, 2015 WL 4591907, at *6 (S.D.N.Y. June 9, 2015) (denying motion to strike contradictory errata sheets even where reasons offered for changes were unsatisfactory, and noting that "[w]hile Rule 30(e) requires an explanation for changes to deposition testimony, it does not require or contemplate judicial scrutiny of the reasonableness of that explanation"); Samad Bros., Inc. v. Bokara Rug Co., No. 09-5843, 2012 WL 43613, at *8 (S.D.N.Y. Jan. 9, 2012) (denying motion to strike contradictory errata sheet on ground that changes were contradictory, but holding that original answers were still admissible at trial).

While many courts have thus granted motions to strike improper errata sheets, none directly asks why courts should or should not do so before summary judgment.  The Court will now take a whack at it.

   D.     Resolution

Having considered the entire landscape of Rule 30(e) cases, the Court is ultimately persuaded that the far better approach is for courts to act promptly – namely, at the motion-to-strike stage.  As Charles Dickens noted, "Procrastination is the thief of time."

First, waiting to rule on the viability of errata sheets until summary judgment injects unnecessary uncertainty and delay into the proceedings.  In briefing summary judgment, parties do not know in advance how the errata sheets will be treated and thus will not know which

version of the testimony to rely on. As a result, they must craft different arguments that respond to alternative factual records. This greatly expands their submissions for no good reason. Since lack of knowledge inhibits parties' ability to weigh risks, moreover, this uncertainty also decreases the likelihood of settlement.

Second, ruling on the errata at summary judgment creates the potential for tension with the Rule 56 standard, which requires a court to construe the evidence in the light most favorable to the nonmoving party and to draw all permissible inferences in its favor. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In resolving the reliability of the errata, courts might well be forced to make a credibility determination about the revisions, which is typically not appropriate at this stage. In contrast, a court examining errata sheets on a motion to strike is not bound by the Celotex standard and may, absent a compelling justification, exclude such revisions.

Third, permitting both original and revised testimony to be considered at summary judgment limits courts' ability to police abuse of the discovery process and devalues the importance of sworn deposition testimony. See E.E.O.C. v. Skanska USA Bldg., Inc., 278 F.R.D. 407, 412 (W.D. Tenn. 2012) ("Indeed, to allow [contradictory revisions] makes a mockery of the serious and important role that depositions play in the litigation process."). (citation and quotation marks omitted).

The Court, consequently, will examine Plaintiffs' errata sheets now upon Defendants' Motion to Strike to determine whether and to what extent they will be permitted to stand.

**III.   Analysis**

The contents of the errata sheets, as alluded to previously, fall into three general buckets: (1) directly contradictory statements, (2) substantive and material additions, and (3) relatively minor clarifications. There are numerous examples of the first type. See, e.g., Mot., Exh. 1 (Errata Sheet of Donchez Coates) at ECF p. 3 (changing "I can't recall . . ." to "Yes, it is my

testimony that Ms. Buie failed to tell me during the union meeting that we had any six months of re-call rights . . . ."); id., Exh. 3 (Errata Sheet of Donna Ward) at ECF p. 3 (changing "Correct" to "That is not correct"); id., Exh. 4 (Errata Sheet of Linda Mathis) at ECF p. 5 (changing "No. I am not aware." to "Yes. I am aware that Curtis Pumphrey made a statement . . . ." ).

There are even more examples of Plaintiffs' using the errata sheets to provide explanations and to expand on responses. See, e.g., Coates Errata Sheet at ECF p. 2 (changing "correct" to "correct because there was a pending motion by my counsel with the court concerning producing the NLRB affidavit"); Ward Errata Sheet at ECF p. 2 (changing "Yes" to "Yes. I made corrections to as many Things [*sic*] that I could remember at the time. I was not allowed to make lot [*sic*] of corrections"); Mathis Errata Sheet at ECF p. 3 (changing "silent" to "silent, but Giant did not disagree with statements made by Ferline").

Plaintiffs, finally, do submit some minor typographical or clerical revisions. See, e.g., Coates Errata Sheet at ECF p. 2 (changing "who it" to "who he"); Ward Errata Sheet at ECF p. 3 (changing "filed on" to "filed for"); Mathis Errata Sheet at ECF p. 3 (changing "401" to "401K"). These need no analysis since they are not challenged.

To justify their revisions, Plaintiffs rely, almost exclusively, on the following one-word explanations: "clarification," "correction," "completion," "mistake," "error," and "incomplete." See Mot., Exhs. 1-5. These terse offerings do little but state the obvious; the Court presumes that Plaintiffs would not submit errata sheets but for some type of mistake or error. But even these meager explanations are not always present for each correction. See, e.g., Mathis Errata Sheet at 2 (changing without any explanation: "Yes. It has my name on it." to "No. Although it has my name on it."). What is missing is any thoughtful or clear articulation of the basis for what constitute significant alterations in sworn testimony.

12

As set forth in Section III.B, *supra*, all of the circuits to consider the issue would uphold the striking of the first category of revisions – those making contradictory, and often material, changes – particularly where the explanations are so scant. For example, in EBC, 618 F.3d 253, which is more permissive than many in allowing revisions, the deponent explained that "[a]fter reading the transcript, I realized that I was confused and misunderstood some of the questions." Id. at 270 (quoting errata sheet) (quotation marks omitted). The Third Circuit described this explanation as "perfunctory" and "conclusory," noted that there was no other sufficiently "corroborative evidence" to explain the change, and thus found that the district court had not abused its discretion in refusing to consider the contradictory errata sheet. See id. at 270-71; see also Holland v. Cedar Creek Mining, Inc., 198 F.R.D. 651, 653 (S.D.W. Va. 2001) ("The witness is also plainly bound by the rule to state specific reasons for each change.") (emphasis added); TG Plastics Trading, Co., 2013 WL 322121, at *2 (no indication that revisions are anything other than "tactical attempt" to rewrite deposition testimony to address legal deficiencies).

The second category of revisions – the material and substantive changes – meet the same fate. In EBC, the deponent changed his answers from "I don't know that I really thought about it" and "[h]onestly I don't [know]" to other more substantive answers that "[told] a different story." EBC, 618 F.3d at 271. These changes were not "yes" to "no," yet the Third Circuit found no difficulty in characterizing them as contradictory revisions that should be stricken. Under this broader definition of "contradictory," therefore, the substantive and material alterations here should similarly be stricken, as they sought to tell a very different story – albeit not one directly contradictory. While the revisions provided here may not be 180-degree reversals, they are certainly sufficiently inconsistent so as to call into question their veracity. And given that the one-word justifications fail to provide any corroborating evidence that the

13

deponents intended to so testify, the revisions should not be permitted to stand. If even the Third Circuit's relatively permissive logic would exclude the revisions, the circuits that rely on the sham-affidavit doctrine or are otherwise more restrictive would obviously also uphold their being struck.

*     *     *

The Court, consequently, will permit only those changes in this case that are typographical or clerical in nature. Those permissible revisions are listed here, with the exception of the Jackson errata sheet, which contained none that the Court will allow.

Coates Errata Sheet (Mot., Exh. 1):

| Page | Line | Reads | Should Read |
|---|---|---|---|
| 302 | 1 | …need. | …needed. |
| 307 | 19 | …who it… | …who he… |
| 329 | 4 | …that sometimes… | …that sometime later… |
| 354 | 11 | …,she would. | …,she would have. |

Ward Errata Sheet (Mot., Exh. 3):

| Page | Line | Reads | Should Read |
|---|---|---|---|
| 314 | 15 | --garner | --Gardner |
| 314 | 17 | …that | …what |
| 317 | 2 | …filed on | …filed for |
| 318 | 4 | …10:00 to 6:00 | 10:00 p.m. to 6:00 a.m. |

| 319 | 12 | …night would | …night he would |
| 323 | 22 | Signed it or-- | Signed it or not. |

Mathis Errata Sheet (Mot., Exh. 4):

| Page | Line | Reads | Should Read |
| --- | --- | --- | --- |
| 8 | 7 | …1903 | $19.03 |
| 22 | 19 | Um-hmm. | Yes. |
| 29 | 10 | Um-hmm. | Yes. |
| 41 | 8 | own…. I would have to look at my own, | own resume…. I would have to look at my own resume, |
| 65 | 4 | Warren Dickens… | Warren Giggetts… |
| 65 | 6-7 | Warren Dickens… | Warren Giggetts… |
| 76 | 14-15 | I seen… They was | I saw…. They were…. |
| 82 | 21 | Um-hmm. | Yes. |
| 99 | 18 | still doing… | still working… |
| 99 | 19 | shift didn't ended… | shift didn't end… |
| 99 | 20 | didn't ended… | didn't end |
| 104 | 12 | was going…. | was all going…. |
| 111 | 8 | 401 | 401K |
| 131 | 17 | replaced | placed |
| 148 | 7,8,9 | McNary | Manerie |

| 171 | 10 | feel… | felt… |
| 182 | 7 | misrepresentation they did for us so. | misrepresentations, that is what they did to us. |
| 182 | 11 | it can be deceived… | it can be deceit… |
| 188 | 13 | anything… | everything… |
| 190 | 20 | or misspelled… | or misspellings… |
| 200 | 4 | It was Giant in May and June. | Giant was present in May and June. |
| 240 | 4, 8 | McNary | Manerie |
| 250 | 22 | didn't take… | didn't type… |

Jones Errata Sheet (Mot., Exh. 5):

| **Page** | **Line** | **Reads** | **Should Read** |
|---|---|---|---|
| 21 | 22 | deaf | death |
| 22 | 4,9 | deaf | death |
| 29 | 15 | ,they right | ,they are right… |
| 29 | 17 | They right | They are right… |
| 39 | 11 | …Essence. | …Essex. |
| 40 | 11 | …Essence. | …Essex |
| 68 | 8 | He don't… | He did'nt… [*sic*] |
| 68 | 8 | He work… | He worked… |

| 83 | 16, 18 | …have knew | …have known |
| 166 | 22 | --I | --There… |
| 209 | 12 | didn't | didn't have…. |
| 225 | 17 | …deaf | …death |

Paige Errata Sheet (Reply, Exh. 1):

| Page | Line | Reads | Should Read |
|---|---|---|---|
| 64 | 11 | Scogg, S-C-O-G-G | Skoog, S-K-O-O-G |
| 130 | 19 | divided, we could – the information *we provided (sic)* | provided, we could – the information I was provided . . . |
| 131 | 11 | Just | Adjust |
| 150 | 15 | $10000 | $10.00 |
| 158 | 13 | employment that *access* an offset, we did not | employment that acts as an *offset*, we did not. |

One final note is in order. As observed by Defendants, see Reply at 1-6, Plaintiffs' brief contains glaring and material misrepresentations. First, and most significantly, it states that the D.C. Circuit "[f]ollows Majority [*sic*] and Broadly Interprets Rule 30(e) Allowing Substantive Changes to Deposition Errata Sheets." Opp. at 10. As detailed *supra*, the D.C. Circuit has not taken any position on the issue, and the limited district court decisions here point in the opposite direction. In support of their incorrect proposition, quite troublingly, Plaintiffs inaccurately

17

represent the holdings of several cases. See id. at 10-11. For example, they argue that "Akosile v. Armed Forces Retirement House, 938 F. Supp. 2d 76 (D.C. Cir. 2013) [*sic*]," id. at 11, evidences the D.C. Circuit's support for a permissive reading of the rule. That is wrong on two levels: that case was only a district court decision, and it merely cites the rule without any analysis whatsoever. See Akosile v. Armed Forces Ret. Home, 938 F. Supp. 2d 76, 84 (D.D.C. 2013). The case, in fact, contained no challenge to the use of an errata sheet; instead, Rule 30(e) was mentioned simply because the deponent had failed to submit any errata sheet after being notified of the rule and later sought to establish that his testimony was inaccurate. How Plaintiffs read this case and understood it to be binding circuit court precedent – and in their favor – defies explanation. Plaintiffs, similarly, cite to several other opinions from courts in this district and misconstrue those holdings as well. See Reply at 2-4.

In addition, as Defendants also point out, Plaintiffs try to pass off an opinion written by a magistrate judge in the District of New Jersey as binding Second Circuit precedent. See Opp. at 7 (citing Sivolella v. AXA Equitable Life Ins. Co., No. 11-4194, 2015 WL 4461583, at *1 (D.N.J. July 21, 2015)). Although the error in geography may be forgiven, it is unclear, in light of Plaintiffs' similar misrepresentations about the state of D.C. Circuit law, whether their counsel appreciates the distinction between a circuit court and a district court. To compound the problem, Plaintiffs' briefing misunderstands the holding of Sivolella so as to imply that the Second [*sic*] Circuit permits revisions regardless of the sufficiency of the justification. Compare Opp. at 7 with Sivolella, 2015 WL 4461583, at *1.

These are, unfortunately, not the only examples of counsel's misrepresentations, but they suggest, at a minimum, a lack of candor to the tribunal. The Court admonishes her to be scrupulous in the future in observing her professional obligations.

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to strike Plaintiffs' errata sheet for failing to comply with Rule 30(e), with the exception of the above-listed permissible changes.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 15, 2015